Jessie ODOM, Appellant–Respondent,

v.

ALLEN COUNTY DEPARTMENT
OF PUBLIC WELFARE,
Appellee–Petitioner.

No. 02A05–9104–CV–127.

Court of Appeals of Indiana,
Fifth District.

Dec. 9, 1991.

Douglas E. Ulmer, Fort Wayne, for appellant-respondent.

David J. Avery, Fort Wayne, for appellee-petitioner.

BARTEAU, Judge.

Jessie Odom appeals the trial court's judgment terminating her parental rights in her son L.O. Odom raises two issues:

1. Whether the Allen County Department of Public Welfare ("DPW") presented clear and convincing evidence to establish a reasonable probability that the conditions which resulted in removal would not be remedied or that the continuation of the parent-child relationship poses a threat to the well-being of the child; and

2. Whether the DPW presented clear and convincing evidence to establish that it satisfied its obligation to provide services to assist Odom in fulfilling her parental obligations.

We affirm.

### FACTS

On February 15, 1989, the DPW received word from Luthern Hospital that Odom had delivered a baby, L.O., at home on February 14, 1989 and that both Odom and L.O. tested positive for cocaine. Pursuant to an emergency order, the DPW placed L.O. in licensed foster care on February 16. L.O. has since remained in foster care. On October 2, 1989, Odom admitted that L.O. was a child in need of services (CHINS) and agreed to the terms of a Parent Participation Plan. On the same date, the trial court adjudged L.O. to be a CHINS and adopted the Participation Plan in its order. The Plan required Odom to:

1. Obtain a psychological evaluation at Park Center; follow recommendations of therapist;

2. Obtain a substance abuse evaluation; follow recommendations of therapist which may include in-patient treatment;

3. Attend and complete a full set of parenting classes in a timely manner;

4. Attend Alcoholics Anonymous and Narcotics Anonymous; provide the Department with verification of attendance;

5. Obtain/maintain suitable housing for a period of not less than six months;

6. Provide the Department with visible means of support which may include but not be limited to employment;

7. Cooperate with the visitation schedule as outlined by the Department; and

8. Provide caseworker with any change of address and circumstance within one week of change.

At the conclusion of the dispositional hearing on October 2, the caseworker requested Odom to contact her the next day to arrange for testing, counselling and parenting classes. However, Odom's caseworker had no contact with Odom and could not locate her until June, 1990 when the caseworker discovered that Odom was in the Indiana Women's Prison. Odom never attempted to contact the caseworker and on April 4, 1990, the trial court authorized the DPW to file a petition to terminate the parent-child relationship. Odom was served with the petition on June 26, 1990. The hearing was held on December 21, 1990. Odom never attempted to contact the caseworker after receiving the petition, although the caseworker did initiate contact with Odom about a week before the termination hearing.

At the termination hearing, Odom explained that she had not complied with the Parent Participation Plan or contacted the caseworker because her life was "out of control," unmanageable, and she was "just running in a rage." She moved around a lot and did not have a stable address from the time of the dispositional hearing in October, 1989, until she was incarcerated in the Indiana Women's Prison in June, 1990. At the time of the termination hearing, Odom resided in the Work Release Center in Allen County. She did not know when the incarceration/work release would end. Odom told the trial court that since being incarcerated she had been attending Alcoholics Anonymous and Narcotics Anonymous and her drug tests showed negative results. She had also been employed for almost four months at the Residence Inn and would be residing with her brother upon her release from the Work Release Center. Since being incarcerated, Odom had not contacted the caseworker because she assumed that the caseworker would contact her.

## STANDARD OF REVIEW

█ In considering whether the evidence is sufficient to support a trial court judgment terminating parental rights, this court will not reweigh the evidence nor judge the credibility of the witnesses. *M.B. v. Delaware County Dept. of Public Welfare* (1991), Ind.App., 570 N.E.2d 78, 82. Only the evidence most favorable to the judgment will be considered. *Id.*

## REMEDY OF CONDITIONS

Odom first argues that the DPW did not show by clear and convincing evidence that a reasonable probability existed that the conditions resulting in removal of L.O. would not be remedied or that continuation of the parent-child relationship posed a threat to L.O.'s well-being. To support a petition to terminate, the DPW must, by clear and convincing evidence, show, among other things, that:

(2) there is a reasonable probability that:

(A) the conditions that resulted in the child's removal will not be remedied; or

(B) the continuation of the parent-child relationship poses a threat to the well-being of the child[.]

Ind.Code 31-6-5-4; *M.B. supra.*

█ At the termination hearing, the DPW offered evidence that the conditions had not been remedied. To determine whether there is a reasonable probability that the condition which resulted in removal of the child will not be remedied, the trial court must judge a parent's fitness to care for the child as of the time of the termination hearing and take into account any evidence of changed conditions. *Page v. Greene County Dept. of Welfare* (1991), Ind.App., 564 N.E.2d 956, 960. At the same time, the trial court must also evaluate the parent's patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *M.B., supra; Page, supra.*

█ The evidence in the record clearly supports the trial court's determination that the conditions resulting in L.O.'s removal would not be remedied. Odom has a

long history of drug and alcohol abuse that caused L.O. to be born addicted to cocaine and that continued after L.O.'s birth. In fact, Odom did not seek help or treatment for her drug and alcohol problem until forced to when incarcerated. Additionally, Odom has a history of moving around constantly and not being able to provide a stable home. These conditions led to L.O. being taken from her custody at his birth. Odom has had absolutely no contact with him since and the evidence shows that he is thriving in foster care. It was the trial court's prerogative to conclude that Odom might be drug free while in prison, but that based on her pattern of conduct it will not last once she is released and the probability is high that the situation will become as it was before her incarceration. The DPW carried its burden of proof by clear and convincing evidence. As the record supports the determination that the conditions would not be remedied, we need not decide whether the DPW presented clear and convincing evidence that the continuation of the relationship posed a threat to L.O.'s well-being.

## PROVISION OF SERVICES

■ Odom next claims that the DPW did not satisfy its obligation to provide services to strengthen family life by assisting Odom to fulfill her parental obligations. Odom cites I.C. 31–6–1–1, which states the policy and purpose of the juvenile code, in support of her claim. However, Odom does not cite any authority for her proposition the terms of I.C. 31–6–1–1 must be met to support a petition for termination. Thus, Odom has waived this argument. Ind. Appellate Rule 8.3(A)(7). We do note, however, that the question has been raised, although not decided, whether the DPW must show that it has provided services to the parent in order to support a termination petition. *See M.B., supra.* The question arises because prior to the 1982 revision, I.C. 31–6–5–4 required such a showing and now does not. At any rate, the facts of the case at issue are that the DPW developed a Parent Participation Plan for Odom in order to assist her in fulfilling her parental obligations and Odom did not

even attempt to comply with the Plan and use the services offered. Odom cannot now complain that the DPW did not provide her with services.

The trial court's judgment terminating the parent-child relationship is affirmed.

AFFIRMED.

ROBERTSON and RUCKER, JJ., concur.